**Ross K. PETERSEN, Appellant,**

**v.**

**CITY OF DECORAH, Iowa, Appellee.**

**No. 2–58841.**

Court of Appeals of Iowa.

Sept. 9, 1977.

Review by Supreme Court Denied
Oct. 14, 1977.

Paul D. Strand of Strand, Anderson & Raduenz, Decorah, for appellant.

Isadore Meyer of Meyer, Zahasky & Lorentzen, Decorah, for appellee.

Heard by ALLBEE, C. J., and DONIELSON, SNELL, OXBERGER and CARTER, JJ.

PER CURIAM.

Plaintiff Ross K. Petersen appeals the trial court's refusal to order the defendant City of Decorah to rezone his property to

allow construction of a shopping center. Petersen's request for rezoning before the zoning commission and the city council was denied upon the ground that the land should be reserved for future industrial use. We hold the zoning of Petersen's property as A–1 agricultural is unreasonable and confiscatory. We do not at this time reach the ultimate issue of Petersen's entitlement to a C–4 shopping center classification for his property. Reversed and remanded.

 Our review is de novo. As a case is heard in the trial court it is generally so considered on appeal. *Anderson v. City of Cedar Rapids,* 168 N.W.2d 739, 741 (Iowa 1969).

Under the existing zoning classification Petersen's use of his land is controlled by the concluding phrase of the A–1 Agricultural District's definition:

" . . . is intended to reserve areas suitable for nonagricultural use until the land is needed for development in accordance with a future land use plan."

The trial court held that the zoning of Petersen's property as A–1 Agricultural was a valid and reasonable zoning classification. If further found in classifying the land as A–1 Agricultural, Decorah acted primarily for flexible holding purposes with the intention that the land would ultimately be used as an industrial area. It factually concluded that the area was adaptable to either a shopping center use or an industrial use.

The issue presented is whether Decorah may "freeze" Petersen's use of his property pending a future determination by the city of the appropriate use of this property.

 In zoning, a municipality exercises the police power delegated to it by the state. As a delegated power, it must be strictly construed. *Business Ventures Inc. v. Iowa City,* 234 N.W.2d 376, 383 (Iowa 1975). The court in Business Ventures recalled the "inevitable danger" referred to by Mr. Justice Holmes in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922):

"The protection of private property in the Fifth amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in decisions upon the Fourteenth amendment. (citation) When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualifications more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.

. . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." 234 N.W.2d at 382 quoting from 260 U.S. at 415–416, 43 S.Ct. 158.

The record indicates the land has remained vacant and unproductive since 1941. The contention by the city that it placed Petersen's land in a "holding" classification until the right industry comes along must be assessed against the fact that no new industry has been attracted to Decorah since 1964.

"Where it appears that under existing zoning restrictions property must remain for an unpredictable future period unimproved, unproductive and a source of expense to the owners from heavy taxes, the zoning ordinance is unreasonable as to such property." *Business Ventures,* 234 N.W.2d at 382 quoting from 8, McQuillan, The Law of Municipal Corporations, § 25.45, pp. 118–119.

A similar attempt to freeze property use was made by a municipality in *Henle v. City of Euclid,* 125 N.E.2d 355, 358 (Ohio 1954). The Ohio court said:

"The claim that the city has the right to 'freeze' plaintiff's property preventing her from its beneficial use until the city gets around to appropriating it for public purposes as a part of the Lakeland Freeway is without foundation."

The Wisconsin court confronted with the use of an A–1 classification as a "holding district" for controlling future development ruled:

"Whatever the zoning authorities might have determined the proper future use and classification of this land pursuant to such general plan, there were and are options available to them other than the A–1, agricultural, classification. The record contains no justification for placing this nonagricultural land in an A–1 agricultural zoning classification." *KMIEC v. Town of Spider Lake,* 60 Wis.2d 640, 211 N.W.2d 471, 476 (Wisc.1973).

In this case Decorah has acted to "improve the public condition . . . by a shorter cut than the constitutional way . . ." in seeking to preserve Petersen's land for future attraction of certain preferred types of industry. *Pennsylvania Coal Co.,* 260 U.S. at 416, 43 S.Ct. at 160. Rather than purchase the land to hold it in reserve, Decorah has used the zoning power to accomplish the result without "paying for" the taking.

The record is clear that the land is not suitable for agricultural purposes. To zone it A–1 Agricultural so it will remain vacant until Decorah can attract the type of industry it desires on this land is a taking without just compensation. The court has unequivocally stated that zoning may not be used as a substitute for eminent domain.

*Uelner Precision T & D, Inc. v. City of Dubuque,* 190 N.W.2d 465, 469 (Iowa 1971).

█ We hold the zoning of Petersen's land as A–1 Agricultural is unreasonable and confiscatory. However, the prescription of a present productive use for Petersen's land is not for this forum at this time. It is uniquely in the first instance the function of the legislative judgment and discretion to arrive at a zoning classification responsive to the public good and to Petersen's reasonable expectations of beneficial enjoyment of his land. We do not say he is entitled to a C–4 shopping center classification. We feel that the zoning commission and the city council should have the opportunity to reassess the propriety of the shopping center use since we have held it cannot force the land to remain idle in an A–1 Agricultural classification awaiting the "right" industry.

We remand for entry of an order directing the city to enact an amendment to the zoning ordinance which permits Petersen a present productive use of his property.

Reversed and remanded.