The INCORPORATED CITY OF DENI-SON, Iowa, Appellee, Cross-Appellant,

v.

Karen M. CLABAUGH and Larry D. Clabaugh, Appellants, Cross-Appellees.

No. 64709.

Supreme Court of Iowa.

June 17, 1981.

Rehearing Denied Aug. 21, 1981.

Morris C. Hurd, Ida Grove, for appellants, cross-appellees.

Richard J. Vipond, Denison, and William F. Fanter, Des Moines, for appellee, cross-appellant.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

This equity action arose from the conversion of a house from a single-family to a two-family dwelling. The City of Denison claimed the builder, Larry D. Clabaugh, and the owner, Karen M. Clabaugh, violated the City's zoning ordinance by failing to comply with the setback requirements thereof. The trial court held for the City and issued a prohibitory injunction enjoining the Clabaughs from continuing construction but refused to grant a mandatory injunction to require the Clabaughs to abate nonconforming portions of the dwelling. Both parties appealed, and the court of appeals affirmed by operation of law.

Ordinance 717 of the City of Denison is a comprehensive zoning ordinance that was enacted in 1970. Section 1.12 of the ordinance allows nonconforming structures lawfully in existence on the effective date of the ordinance to continue unabated. The issues in this suit are founded on the validity, meaning, and application of an exception contained in section 1.12(2), which provides:

> Should such structure be destroyed by any means to an extent of more than 50 percent of its replacement cost at the time of destruction, it shall not be reconstructed except in conformity with the provisions of this ordinance.

The Clabaughs assert the trial court erred: (1) in concluding that the term "replacement cost" is not unconstitutionally vague or unconstitutional as applied to them; (2) in finding that substantially more than fifty percent of the replacement cost of the house was destroyed; (3) in finding that the Clabaughs had abandoned the house and that the actions of the City of Denison did not constitute a taking of the Clabaughs' property; and (4) in ruling that the City

was not equitably estopped from obtaining the prohibitory injunction. The City claims that the trial court erred in failing to issue a mandatory injunction requiring the Clabaughs to abate the zoning ordinance violation.

■ This action for injunctive relief was properly pled and tried in equity. *See Sound Storm Enterprises, Inc. v. Keefe*, 209 N.W.2d 560, 565 (Iowa 1973). Thus, our review is de novo. *Freese Leasing, Inc. v. Union Trust & Savings Bank*, 253 N.W.2d 921, 925 (Iowa 1977). In equity cases, especially when considering the credibility of the witnesses, this court gives weight to the fact findings of the trial court but is not bound by them. Iowa R.App.P. 14(f)(7). With the guidance of these principles, we find the following facts.

Larry and Karen Clabaugh purchased a corner lot containing an eighty-five-year-old, single-family dwelling in the City of Denison in July 1976 for $6250. With the intention of converting the house into a duplex, Larry obtained a building permit from the City, issued by Pat Stoll, City Building Inspector and Zoning Administrator. The lot was bordered by public streets on the south and west sides. The front of the house was seventeen feet from the south property line, and the west side of the house was ten feet from the west property line, which were not in conformity with the zoning ordinance's minimum setback requirements of twenty-five and fifteen feet respectively. Since the house was in existence on the effective date of the ordinance, however, it could remain in its nonconforming state, provided the conversion did not destroy the structure to the extent of more than fifty percent of its replacement cost.

In January 1977 Larry deeded the lot to his wife, Karen, for tax purposes. Some work on the duplex had already been done at that time, and work continued intermittently thereafter. On August 19, 1977, Larry was served with a letter from Pat Stoll's successor stating that the structure was in violation of section 1.12(2), ordering construction to cease, and ordering Larry to comply with the zoning ordinance within thirty days. Larry continued construction until he was charged with violating the zoning ordinance, a misdemeanor.

The City then brought this action, alleging that the Clabaughs were in violation of the setback requirements of the zoning ordinance. The City claimed the violation existed because the Clabaughs, in the process of converting the house to a duplex, had destroyed the original structure to an extent of more than fifty percent of its replacement cost. The trial court agreed and granted the City's request for a prohibitory injunction enjoining further construction but refused to grant a mandatory injunction to require compliance with the setback requirements by removal of portions of the building.

I. *Constitutionality of the ordinance.*

■ *A. Vagueness.* The Clabaughs allege that the term "replacement cost" contained in section 1.12(2) is unconstitutionally vague. In challenging the constitutionality of the ordinance, the Clabaughs have a heavy burden. A presumption of constitutionality exists which must be overcome by negating every reasonable basis on which the ordinance can be sustained. *Board of Supervisors v. Department of Revenue*, 263 N.W.2d 227, 235 (Iowa 1978); *Iowa City v. Nolan*, 239 N.W.2d 102, 103 (Iowa 1976).

■ A civil statute is unconstitutionally vague under the due process clause of the fourteenth amendment to the United States Constitution when its language does not convey a sufficiently definite warning of proscribed conduct, when measured by common understanding or practice. *Arnett v. Kennedy*, 416 U.S. 134, 159–60, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15, 36 (1974). Thus, when persons must necessarily guess at the meaning of a statute and its applicability, the statute is unconstitutionally vague. *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). However, "[a] statute is not vague when the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, reference to the common law, to the

dictionary, or if the words themselves have a common and generally accepted meaning." *State v. Donner*, 243 N.W.2d 850, 853 (Iowa 1976).

In *Ezell v. City of Pascagoula*, 240 So.2d 700 (Miss.1970), a municipal zoning ordinance containing the term "replacement cost" was at issue. Without discussion, the Mississippi Supreme Court found no merit in the contention that the ordinance, which was substantially identical to the ordinance at issue here, was unconstitutional on due process grounds. *Id.* at 702.

■ We believe that under generally accepted usage and practice the term "replacement cost" establishes an ascertainable standard for determining when a structure will lose its status as a lawful nonconforming use. As used in section 1.12(2) "replacement cost" means simply the amount of money it would cost to replace the structure by restoring it to its former state of existence or condition. *See* Webster's Third New International Dictionary 1925 (unabridged 1966) (definition of replace). If a structure were totally destroyed, the replacement cost would be the cost of rebuilding that particular structure. If the structure were partially destroyed, the replacement cost would be the cost of restoring the part destroyed.

We conclude that the challenged portion of section 1.12(2) conveys a sufficiently definite warning of the conduct proscribed. The trial court did not err in holding that the term "replacement cost" is not unconstitutionally vague as the ordinance is applied.

*B. As applied.* The Clabaughs also maintain that section 1.12(2) is unconstitutional as applied to them. They claim that arbitrary administration of the ordinance violated their due process rights under the fourteenth amendment to the United States Constitution. They argue that the application for the building permit, which was prepared by Pat Stoll and signed by Larry, states that "50% of existing structure will be left." They also point out that when the City demanded that construction cease it reminded them of this statement on the application. The Clabaughs thus contend that they were misled into believing that they would be in compliance with section 1.12 if fifty percent of the existing structure were retained.

■ We find these arguments unpersuasive. Larry testified that he read section 1.12 twice when he applied for the building permit and took a copy of the ordinance home with him. He therefore had knowledge of the specific requirements of section 1.12(2). The notation in the application for the building permit appeared under the heading "Description of Work," and did not purport to establish the standard for compliance with section 1.12. Since the Clabaughs had actual knowledge of the requirements of section 1.12(2), their reliance on that notation is unjustified. The City did not apply the ordinance in an unreasonable, arbitrary, capricious, or discriminatory manner. *See Business Ventures, Inc. v. Iowa City*, 234 N.W.2d 376, 382 (Iowa 1975); *Keller v. City of Council Bluffs*, 246 Iowa 202, 209, 66 N.W.2d 113, 117 (1954); 8 E. McQuillin, The Law of Municipal Corporations § 25.138, at 409–10 (3d rev. ed. 1976). We therefore hold that section 1.12(2) was not unconstitutionally applied to the Clabaughs.

II. *Finding of required destruction.* The Clabaughs assert that the trial court erred in finding that substantially more than fifty percent of the replacement cost was destroyed. They first contend they did not destroy the structure but only remodeled it.

■ We do not agree that a structure cannot be destroyed in part when it is remodeled, repaired, or restored. Section 1.12(2) applies to nonconforming structures that have been "destroyed by any means" to the required extent. "Destroy" is defined as "to pull or tear down," Webster's Third New International Dictionary 615 (unabridged 1966), and "remodel" as "to model anew: reconstruct," *id.* at 1921. It is indisputable that a portion of the structure was torn down in the course of remodeling it. We therefore conclude that the structure was destroyed in part by the means of remodeling.

Secondly, the Clabaughs contend that even if the structure was partially destroyed within the meaning of section 1.12(2), it was not destroyed "to an extent of more than 50 percent of its replacement cost at the time of destruction." However, the evidence shows that the house was raised and the foundation and basement walls were replaced. The roof and supporting lumber, ceilings, front porch, windows, and exterior doors were removed. Furthermore, interior and exterior walls, flooring, and the electrical, plumbing, and heating systems were partially removed. Expert witnesses testified that over ninety percent of the replacement cost of the structure had been destroyed. Although this testimony was contradicted by Larry, we find that there was overwhelming evidence that more than fifty percent of the replacement cost of the structure had been destroyed.

III. *Abandonment and taking.*

A. *Abandonment.* The Clabaughs claim the trial court erred in finding that they abandoned the house. They dispute this factually and cite authority on the question of abandonment of a nonconforming use. Abandonment of a nonconforming use was not an issue in this litigation, however; nor was it relied on by the trial court. The trial court used the term "abandonment" in its findings of fact in summarizing the Clabaughs' activities after the City ordered construction on the house to cease. The court was merely indicating that the Clabaughs did not thereafter attempt to perform further work on the house; it did not make a legal determination that the Clabaughs had waived any of their property rights by this "abandonment." We therefore find no prejudicial error.

B. *Taking.* The Clabaughs also assert that the trial court erred in finding that the action of the City did not constitute a taking. In their amended answer to the City's petition, the Clabaughs plead as an affirmative defense that Karen Clabaugh owned and had rightful possession of the real estate at the commencement of the action, but that during the pendency of the action the City overthrew her rightful possession and freehold. She, therefore, denied that she owned the real estate. The trial court disagreed:

The actions of the City of Denison pursuant to Section 1.12 of Ordinance No. 717 in this case do not constitute a taking of the defendant's property. The ordinance permits the use of the property for a two-family dwelling, which is the use desired by the defendants. The provisions of the ordinance with respect to the size of yards and the reconstruction of partially destroyed structures are a valid exercise of lawful zoning power.

In order for us to determine the validity of the trial court's ruling, it is necessary for us to review the facts in greater detail.

When Larry ceased work on the dwelling he covered the doors and windows. In February 1979, however, the mayor received complaints that children were playing in and around the building. The City then claimed the dwelling was in dangerous condition and gave Karen notice to abate the nuisance. Larry advised the City that it was up to his attorney to respond to the nuisance allegation. The City then placed a fence around the premises to keep children out. The city clerk testified that there was no intent on the part of the City to exclude the Clabaughs from the property or to assert ownership.

The Clabaughs argue that the City's action in forcing them to cease construction, prosecuting Larry for a misdemeanor, and putting a fence around the premises completely deprived them of their property. Citing *Petersen v. City of Decorah*, 259 N.W.2d 553 (Iowa Ct.App.1977), they insist that the City used its zoning authority to take their property without compensating them for it.

*Petersen* is factually distinguishable. In that case the City of Decorah refused to rezone land, which was not suitable for agricultural purposes, from an agricultural classification to allow construction of a shopping center in order to preserve the land for future industrial use. The court of appeals held that the City used its zoning power to "freeze the use" of the land, and

that this was unreasonable and confiscatory. *Id.* at 554–55.

We recognize that the exercise of police power may amount to a taking if it deprives the owner of the substantial use and enjoyment of his property. *Phelps v. Board of Supervisors*, 211 N.W.2d 274, 276 (Iowa 1973). However, elimination of nonconformities is a valid objective of zoning ordinances. *See* 8A E. McQuillin, *supra*, § 25.183. Whether or not the exercise of zoning authority is so oppressive that it constitutes a taking depends on the circumstances of each case. *Woodbury County Soil Conservation District v. Ortner*, 279 N.W.2d 276, 278 (Iowa 1979).

The City's action in this case did not constitute a taking. The City did not arbitrarily "take" the Clabaughs' property for a public use, as was done in *Petersen*. It merely enforced the provisions of its zoning ordinance and placed a fence around the premises to protect the public health. The Clabaughs had knowledge of the requirements of section 1.12(2). They knew that if they destroyed more than fifty percent of the replacement cost of the structure they would have to comply with the setback requirements of the ordinance, which they do not challenge as being unreasonable or confiscatory. The trial court did not err in finding that the City's action did not constitute a taking.

IV. *Equitable estoppel.* The Clabaughs argue that the trial court erred in ruling that the City was not estopped from obtaining an injunction. In support of this position they assert that they fully disclosed their plans to Pat Stoll prior to the issuance of the building permit. They also allege that they performed work, incurred expenses, and were issued other permits, and that the City did not object until construction of the duplex had almost been completed. The Clabaughs, therefore, claim the City acquiesced in the alleged violation of section 1.12(2), and that they relied on the City's silence and inaction.

The essential elements of the affirmative defense of equitable estoppel are:

(1) a false representation or concealment of material facts; (2) a lack of knowledge of the true facts on the part of the actor; (3) the intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury. *Johnson v. Johnson*, 301 N.W.2d 750, 754 (Iowa 1981). The party asserting the defense of equitable estoppel has the burden of establishing all of these essential elements by clear, convincing, and satisfactory evidence. *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979).

The trial court found that the Clabaughs had not established that a city official made a false representation or concealed a material fact, and that they did not prove that they lacked knowledge of the requirements of section 1.12(2). We have reviewed the evidence and agree with the trial court.

When Larry applied for the building permit, he had a lengthy discussion with the building inspector. Larry presented the inspector with a rough plat and advised him of intended alterations to the structure. The inspector testified that they read section 1.12, and that he informed Larry at least six times that the old house could lose its status as a lawful nonconforming use. The inspector also testified that Larry said there would be no difficulty in retaining enough of the structure to avoid any problems. At trial this evidence was disputed. We agree with the trial court's finding, however, that the Clabaughs failed to establish by clear, convincing, and satisfactory evidence that the City made a false representation or concealed material facts and that they lacked knowledge of the requirements of section 1.12(2).

The Clabaughs nevertheless contend that the City became bound by its silence. They rely on *Conley v. Warne*, 236 N.W.2d 682 (Iowa 1975), to support their position. In that case we held that, under a special principle of estoppel, a neighbor who observed in silence and without objection as an adjoining landowner expended large sums of money toward property improve-

ment became bound by her silence and was therefore estopped from complaining of various zoning ordinance violations. *Id.* at 685–86. In *Conley,* however, the homeowners acted in innocence and relied in good faith on the contractor to comply with the zoning ordinance. We specifically stated that the contractor could not claim to have acted in similar good faith because he had obtained the building permit with less than full disclosure of the extent of reconstruction. *Id.* at 686. The Clabaughs do not stand in the position of the homeowners in *Conley.* Larry was the contractor and was aware of the requirements of section 1.12; he knew or should have known the consequences of destroying more than fifty percent of the replacement cost of the house. The *Conley* exception to the general rule of equitable estoppel is, therefore, not applicable.

V. *Injunctions.* General authority for trial courts to issue injunctions is found in Iowa R.Civ.P. 320–330. Section 414.20, The Code 1977, provides specific authority for a municipality to institute any appropriate action or proceeding to prevent or abate zoning ordinance violations. We have approved the issuance of injunctions in zoning cases. *See, e. g., City of Des Moines v. Harvey,* 243 N.W.2d 606, 610 (Iowa 1976); *Conley v. Warne,* 236 N.W.2d at 687; *Board of Supervisors v. Miller,* 170 N.W.2d 358, 364 (Iowa 1969); *Boardman v. Davis,* 231 Iowa 1227, 1232, 3 N.W.2d 608, 611 (1942). However, the equitable power to enjoin is not a routine remedy and is designed primarily to avoid irreparable damage and to afford relief when there is no adequate remedy at law. *Myers v. Caple,* 258 N.W.2d 301, 304 (Iowa 1977); 43A Am.Jur.2d *Injunctions* §§ 48–49 (1978). Thus, injunctive relief is an extraordinary remedy, to be granted with caution and only when clearly required. *Kriener v. Turkey Valley Community School District,* 212 N.W.2d 526, 536 (Iowa 1973).

A. *Prohibitory injunction.* The Clabaughs claim the trial court erred in granting the prohibitory injunction enjoining further construction on the duplex. They contend that (1) the City had control of the land since September 1978 by virtue of a taking and that an injunction was therefore unnecessary, and (2) the City did not come into the action with "clean hands" and was not entitled to equitable relief because it acted arbitrarily and oppressively. We disposed of the "taking" claim in division III. We shall therefore address only the argument that the City exercised its zoning power in an arbitrary and oppressive manner.

Generally, setback provisions in a zoning ordinance are a valid exercise of police power. *Boardman v. Davis,* 231 Iowa at 1230, 3 N.W.2d at 610. "In determining the validity of the police regulation the prime consideration must be the general purpose and relationship of the ordinance and not the hardship of an individual case." *Id.* at 1231, 3 N.W.2d at 610. Arbitrary is defined: "[F]ixed or done capriciously or at pleasure. Without adequate determining principle; . . . nonrational; not done or acting according to reason or judgment; depending on the will alone. . . . [N]ot governed by any fixed rules or standard." Black's Law Dictionary 96 (5th ed. 1979).

The Clabaughs' claim that the City acted arbitrarily and oppressively is directed at the administration of the zoning ordinance. Their arguments are essentially the same as those advanced in division I(B). However, they also contend that the residents of the neighborhood did not complain, they were not interfering with the rightful use of the property by others, and the City has no interest in the conversion of the structure to a duplex. Basically, the Clabaughs argue that as long as no one complains the City should abstain from taking action.

The courts will not interfere with the zoning decisions of a municipality unless there is a clear abuse of discretion. 8A E. McQuillin, *supra,* § 25.279. We find no such abuse here. The City acted according to fixed standards. There was no showing that the City allowed other persons to violate the zoning ordinance and that the Clabaughs received discriminatory treatment. On the basis of the record, it ap-

pears that the City pursued remedies provided by law in enforcing its zoning ordinance; the Clabaughs did not prove that the City acted arbitrarily and oppressively.

The record is clear that the parties were unable to arrive at a satisfactory solution to the zoning violation. An injunction was the only effective remedy. We therefore hold that the trial court did not err in issuing the prohibitory injunction.

*B. Mandatory injunction.* The City claims that the trial court's refusal to grant a mandatory injunction requiring abatement of the setback violations of the zoning ordinance constituted error. The trial court concluded that the prohibitory injunction was a sufficient remedy, and that the further issuance of a mandatory injunction would be ineffectual. The court reasoned that removal of the portions of the structure in violation of the setback requirements of the zoning ordinance would not completely solve the problem: the dwelling would still have to be either completed or demolished.

In refusing to grant the mandatory injunction, the trial court relied on *Iowa Natural Resources Council v. Van Zee*, 261 Iowa 1287, 1292–93, 158 N.W.2d 111, 115 (1968): "Injunctive relief by abatement is a harsh and severe remedy and, except in cases of nuisances or other great necessity, it should not be granted unless that authority is clearly and specifically provided by the legislature."

In the present case, however, authority is specifically provided by the legislature. Section 414.20, The Code 1977, provides authority for a municipality to institute an action to abate zoning ordinance violations.

As the trial court noted, required compliance with the setback provisions of the zoning ordinance may not be a complete remedy. The structure at issue, however, has been neither reconstructed nor demolished. The building stands—not only as an eyesore, but also as a danger to the community. Reason dictates that something be done. As a practical matter, because of the position of the basement supporting walls, compelled compliance with the setback provi-

sions of the zoning ordinance will probably result in complete demolition—if reconstruction is not attempted. If part of the structure would remain in an incompleted state, however, the City could seek to have the situation abated as a nuisance.

We hold that the trial court erred in refusing to grant a mandatory injunction requiring compliance with the zoning ordinance. We believe this harsh remedy should be tempered, however, by affording the Clabaughs an opportunity to seek a variance to the setback provisions of the ordinance within such time as the trial court shall determine to be reasonable. If after such time a variance has not been sought or has been denied on proper grounds, the trial court shall issue a mandatory injunction of abatement.

The judgment of the trial court and the decision of the court of appeals are affirmed, except as to the trial court's refusal to grant the requested mandatory injunction, which we reverse. The case is remanded to the district court for proceedings consistent with this opinion.

DECISION OF COURT OF APPEALS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.