WALLING, Adm'r of Wage and Hour Division, v. HOME LOOSE LEAF TOBACCO WAREHOUSE CO., Inc., et al.

No. 6.

District Court, E. D. Kentucky.

Sept. 18, 1943.

Douglas B. Maggs, Sol., and Irving J. Levy, Associate Sol., and Jeter S. Ray, Regional Atty., and Glenn M. Elliott, Atty., U. S. Dept. of Labor, both of Nashville, Tenn., for plaintiff.

J. J. Greenleaf, of Richmond, Ky., for defendants.

FORD, District Judge.

I have heretofore indicated my views upon all questions involved in this case except that presented by the contention of the defendants that, due to the exemption provisions of Section 13(a) (10) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (10), sections 6 and 7 of the Act, 29 U.S.C.A. §§ 206, 207, do not apply to their employees.

Congress imposed upon the Administrator the difficult task of working out a practical solution of the many intricate problems involved in the administration of the Act in harmony with its declared policy and expressed purpose. It expressly delegated to him authority to define many of its terms including the phrase "area of production", as used in the exemption provision here relied upon. In the performance of his duty, the Administrator has obviously considered it incumbent upon him to define this phrase, not as an abstract concept, but as it is employed in this particular statute, in the light of the mischief to be corrected and the end to be attained. Warner v. Goltra, 293 U.S. 155, 158, 55 S.Ct. 46, 79 L.Ed. 254. By a regulation duly promulgated he has provided that an individual shall be regarded as employed in handling agricultural commodities for market, in the "area of production", within the meaning

of section 13(a) (10), "if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed ten". See Wage and Hour Regulations, April 1941, section 536.2. The defendants challenge the validity of this regulation only in so far as it narrows the application of the exemption by limiting it to employees engaged in an establishment having not more than ten employees. No question is raised as to the validity of that portion of the regulation which limits the scope of the exemption to employees performing any of the enumerated operations "on materials all of which come from farms in the general vicinity of the establishment."

The Supreme Court has frequently emphasized the general rule that exemption provisions of a remedial statute "should be strictly construed; that is, should be so interpreted as not to destroy the remedial processes intended to be accomplished by the enactment", Spokane & I. E. R. Co. v. United States, 241 U.S. 344, 350, 36 S.Ct. 668, 671, 60 L.Ed. 1031, "should be narrowed and limited to effect the remedy intended", Piedmont & N. R. Co. v. Interstate Commerce Commission, 286 U.S. 299, 311, 52 S.Ct. 541, 545, 76 L. Ed. 1115, and should be read in harmony with the purpose of the measure and held to extend only to those plainly within its terms, McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164, Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 83, 62 S.Ct. 932, 86 L.Ed. 1283. That the Fair Labor Standards Act is highly remedial, and that provisions which create exemptions from its operation should be construed and interpreted in accordance with these rules, is not open to doubt. Helena Glendale Ferry Co. v. Walling, 8 Cir. 132 F.2d 616, 619, Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 16.

Giving effect only to the unchallenged portion of the administrative regulation, before the defendants' employees may be denied the benefits of this remedial legislation, the burden rests upon the defendants to clearly and plainly establish that all, or substantially all, of the tobacco which they handled "came from farms in the general vicinity of the establishment".

The corporate defendant, Home Loose Leaf Tobacco Warehouse Company, of which its co-defendant W. E. Luxon is president, operates the business of conducting auction sales of loose leaf tobacco, at four warehouses located in Richmond, Madison County, Kentucky. It operates five sales floors with a large number of employees who handle the tobacco when received at the warehouse and upon delivery to purchasers. In addition to managing and supervising the corporate enterprise, Mr. Luxon purchases tobacco, on his individual account, on these warehouse floors and at other loose leaf warehouses in the city, some of which he resells on these floors and some of which he transports to Lexington for redrying and resale. He also processes and sells a considerable quantity of "scrap" tobacco gathered from the sales floors of the company.

It appears from the evidence that during the 1938–39 season a total of 5,184,124 pounds of tobacco were sold at auction upon the defendants' floors, of which 625,076 pounds represented resales, leaving a net of 4,559,048 pounds for the season. Of this total 64,340 pounds were received from states other than Kentucky, 103,576 pounds from sources the location of which is not shown by the records, and 950,940 pounds were received from numerous counties of Kentucky not located contiguous or adjacent to Madison County, many of which are located fifty miles or more from the establishment at Richmond. It thus appears that more than twenty percent of the total volume of tobacco handled came from places unknown, from other states and from Kentucky counties entirely too remote from the establishment to be regarded as within its "general vicinity". A similar computation from the records in evidence discloses substantially the same situation, relatively speaking, in respect to the tobacco handled in the seasons of 1939–40, 1940–41 and 1941–42.

The defendants contend that, although many of the counties from which the tobacco is received at Richmond are not contiguous or adjacent to Madison County, the geographical location of most of them is such that Richmond is the normal and customary market for their tobacco and in some cases the nearest market to them. Neither custom nor convenience, in respect to the place of marketing an agricultural commodity, however, is prescribed

as the test for determining whether a particular marketing establishment is within the "area of production" of such commodity.

The defendants' sales floors are operated not merely to serve local producers. They receive and sell tobacco delivered by speculators and other dealers as well as producers, without regard to where it is produced or the place from which it comes.

■ The defendants have not sustained the burden of showing that their employees are plainly within the terms of the exemption provision, as defined by the unchallenged portion of the administrative regulation. It seems unnecessary to consider the other interesting questions which have been raised and ably discussed in briefs by both parties.

I am of the opinion that the plaintiff is entitled to the relief for which he prays.

Attorneys for the plaintiff will submit Findings of Fact, Conclusions of Law and Judgment in conformity with the views heretofore and herein expressed.