## KENTUCKY STATE AFL–CIO et al., Appellants,

v.

## Jesse PUCKETT, Mayor, et al., Appellees.

Court of Appeals of Kentucky.

May 28, 1965.

Herbert L. Segal, Louisville, Bert T. Combs, Lexington, for appellants.

H. B. Kinsolving, III, Shelbyville, for appellees.

Robert T. Caldwell, Ashland, for intervenors Cities of Morganfield and Horse Cave.

CULLEN, Commissioner.

This appeal is from a judgment upholding the validity of a "right-to-work" ordinance of the City of Shelbyville. Appellants are labor organizations and certain members and officers thereof, who had sought a judgment declaring the ordinance to be unconstitutional.

The significant provision of the ordinance is:

"* * * the right of persons to work shall not be denied or abridged on account of membership or nonmembership in, or conditioned upon payments to, any labor union, or labor organization; * * *."

In substance the ordinance (for violation of which penalties are provided) undertakes to outlaw "union shops" and "agency shops." The initial question with which we are faced is whether Congress has pre-empted the field of regulation of such union-security agreements to the extent that local

political subdivisions of a state have no power to legislate in the field (as affects interstate commerce).

Section 14(b) of the National Labor Management Relations Act, as amended, 29 U.S.C.A. § 164(b), provides:

> "(b) Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any *State* or *Territory* in which such execution or application is prohibited by *State* or *Territorial* law." (Our emphasis.)

If the view be taken that by Section 8 (a) (3) of the National Labor Management Relations Act, as amended, 29 U.S.C.A. § 158(a) (3), Congress did not intend to pre-empt at all the field of union-security agreements, then Section 14(b) would serve no purpose other than to restate and emphasize that fact, and the use of the words "State or Territory" in Section 14(b) would have no particular significance. See Berke and Brunn, Local Right to Work Ordinances: A New Problem in Labor and Local Law, 9 Stan.L.Rev. 674.

On the other hand, if it be considered that by Section (8) (a) (3) Congress did intend to pre-empt the field of union security agreements then Section 14(b) would seem to serve the function of making a special exception out of the pre-emption. See Painter's Local Union No. 567, etc. v. Tom Joyce Floors, Inc., Nev., 398 P.2d 245. Under the latter view, the words "State or Territory" very well could be meant to so limit the exception as to exclude local subdivisions. See Finman, Local "Right to Work" Ordinances: A Reply, 10 Stan.L. Rev. 53.

■ In our opinion the latter construction is required by the terms of the Act and by its general import and purpose. The proposition that only by reason of Section 14(b) is the Federal Act precluded from making a full pre-emption is supported by the following statement from Retail Clerks International Ass'n v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (at 375 U.S. 102, 84 S.Ct. 222):

> " * * * Yet even if the union-security agreement clears all federal hurdles, the States by reason of Section 14 (b) have the final say and may outlaw it. There is thus conflict between state and federal law; but it is a conflict sanctioned by Congress with directions to give the right of way to state laws barring the execution and enforcement of union-security agreements."

As so indicated, Section 14(b) makes an exception out of the otherwise full pre-emption by the Act. The exception should be strictly and narrowly construed because it represents a departure from the overall spirit and purpose of the Act. See Thomas E. Basham Co. v. Lucas, 6 Cir., 21 F.2d 550; Walling v. Home Loose Leaf Tobacco Warehouse Co., D.C., 51 F.Supp. 914. We think it is not reasonable to believe that Congress could have intended to waive other than to major policy-making units such as states and territories, the determination of policy in such a controversial area as that of union-security agreements. We believe Congress was willing to permit varying policies at the state level, but could not have intended to allow as many local policies as there are local political subdivisions in the nation.

■ It is our conclusion that Congress has pre-empted from cities the field undertaken to be entered by the Shelbyville ordinance. It is true that there may be a tiny area of purely intrastate activity to which the federal Act does not apply and to which the ordinance validly could apply (cf. Chavez v. Sargent, 52 Cal.2d 102, 339 P.2d 801), but obviously the ordinance would not have been enacted to govern only that tiny area, so we think the ordinance must be held invalid in its entirety, as inseparable.

We find it unnecessary to discuss the questions of whether the ordinance in issue is within the scope of the police power of a Kentucky city, and whether the ordinance contravenes the public policy of the state as expressed in KRS 336.130.

The judgment is reversed with directions to enter judgment declaring the ordinance in question to be invalid and unenforceable.