## NATIONAL LABOR RELATIONS BOARD, Plaintiff,

and

## Local Union No. 1385, Western Council of Industrial Workers, Plaintiff in Intervention,

v.

## PUEBLO OF SAN JUAN, Defendant.

### Civ. No. 98–35 MV/RLP.

United States District Court,
D. New Mexico.

Nov. 30, 1998.

---

Raymond Hamilton, U.S. Attorney's Office, Albuquerque, NM, Margery E. Lieber, Nancy E. Kessler . Platt, Washington, DC, for N.L.R.B.

Morton S. Simon, Simon & Oppenheimer, Santa Fe, NM, Michael T. Garone, Portland, OR, for Local Union No. 1385 Western Council of Indus. Workers.

Leander Bergen, Nordhaus, Haltom, Taylor, Taradash & Frye, Albuquerque, NM, for Pueblo of San Juan.

Mickey D. Barnett, Barnett & Scott, Albuquerque, NM, John C. Scully, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, for National Right to Work Legal Defense Foundation, amicus.

## MEMORANDUM OPINION AND ORDER

VAZQUEZ, District Judge.

**THIS MATTER** is before the Court on Intervenor's Motion for Summary Judgment [**Doc. No. 33**], Defendants' Motion for Summary Judgment [**Doc. No. 39**], and Plaintiff National Labor Relations Board's Motion for Summary Judgment [**Doc. No. 47**] all filed May 1, 1998. Also before the Court is *Amicus Curiae* National Right to Work Foundation's Memorandum and the parties' responses to the *amicus* brief. Having reviewed 13 briefs submitted by the parties and the *amicus*, the Court concludes that oral argument on these Motions is not necessary and, accordingly, **DENIES** Intervenor's request for a hearing on these matters. Further, the Court, having considered the moving papers, relevant law, and being otherwise fully informed, finds that Defendant's Motion for Summary Judgment is well taken and will be **GRANTED** and that the Intervenor's and the Plaintiff's Motions for Summary Judgment are not-well taken and will be **DENIED,** as explained below.

## BACKGROUND

In this action, Plaintiff the National Labor Relations Board ("NLRB") and Intervenor Local Union No. 1385, Western Council of Industrial Workers ("Union") challenge the validity of a labor ordinance adopted by Defendant the Pueblo of San Juan ("Pueblo").

The parties agree that the following are the undisputed facts:

Prior to August, 1996, Duke City Lumber Company ("Duke City") owned and operated a sawmill on Tribal land within the San Juan Pueblo Indian Reservation. Duke City leased the land used for its operations from the Pueblo pursuant to an agreement approved by the Department of Interior. On August 21, 1996, Duke City sold the sawmill and related assets to Idaho Timber Corporation ("Idaho Timber"). The Pueblo agreed to release Duke City from all obligations under its lease in exchange for a commitment by Idaho Timber to enter into a new lease. The Department of Interior approved this arrangement.

The Pueblo and Idaho Timber, on behalf of its subsidiary Rio Grande Forest Products, Inc. ("Rio Grande"), negotiated a new lease. The lease finally agreed on contained employment preferences for Tribal members and a "right-to-work" provision which stated that Tribal members would not be required to join or pay dues to a union as a condition of employment with Rio Grande. The Department of Interior approved the new lease with these provisions. On August 22, 1996, Rio Grande began operating the sawmill pursuant to the conditions of the new lease.

Shortly after Rio Grande assumed operations of the mill, the Union requested that Rio Grande enter into a collective bargaining agreement with it as the exclusive bargaining agent for the employees. Rio Grande refused and the Union filed an unfair labor practices charge with the NLRB on October 25, 1996.

During the pendency of the unfair labor practices charge, on November 6, 1996, the Pueblo enacted Labor Organizations Ordinance No. 96–63 ("Ordinance"). The Ordinance codified the provision of the Rio Grande lease stating that union membership could not be required of anyone employed on Pueblo lands.

In settlement of the unfair labor practices charge, the Union and Rio Grande entered into a collective bargaining agreement. A provision of that agreement requires that all Rio Grande employees become members of the Union. The Union and Rio Grande agreed however that this provision would take effect only if the Pueblo Council repealed the Ordinance or a court declared the Ordinance invalid. On February 4, 1998, the Pueblo amended the Ordinance but did not repeal it.

The NLRB subsequently filed the instant action seeking declaratory and injunctive relief and the Union intervened. Each party has filed a motion for summary judgment, agreeing that there are no genuine issues of material fact. The Pueblo asserts that the Ordinance is a valid exercise of it inherent sovereign authority. The NLRB and the Union argue that federal labor law preempts any legislation on the part of the Tribe in this area. The question currently pending before the Court is which party should prevail on the merits of the case.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to" 'secure the just, speedy and inexpensive' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir.1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322, 106 S.Ct. 2548.

## ANALYSIS

The legal issue presented by this case is as follows: Can an Indian Tribe adopt an ordinance prohibiting compulsory union membership for all individuals employed within Tribal lands or does federal labor law preempt this area? This is an issue of first impression which has not been addressed in any published opinion.[1]

Before addressing this question, the Court must clarify what is not at issue here. The NLRB and the Union spend considerable energy arguing that federal labor law is applicable to a non-Indian employer on Indian lands. This, however, is not the issue in dispute in this case. The Court may assume without deciding that Rio Grande, a wholly private, non-Indian company, is bound by federal labor law, even though its operations are entirely on Indian land. But, as a consequence of the privilege of conducting business on Indian land, Rio Grande must also abide by the law of the San Juan Pueblo Indian Nation. *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). As a sovereign nation, the Pueblo has the inherent authority to regulate the manner in which commerce is conducted within its territorial limits, which includes the inherent authority to regulate the commercial conduct of non-Indians who choose to engage in business on Indian land. *Id.* (holding that a Tribe's power to tax business conducted on the reservation derives

---

**1.** One unpublished case, *Audit Services Inc. v. Martel Const. Inc.*, 930 F.2d 26 (9th Cir.1991) (table), comments in passing that a Tribe may enact such an ordinance both pursuant to its inherent Tribal powers and pursuant to the provisions of the National Labor Relations Act. However, this was not an issue before the court and was not a holding of the case.

not only from its power to exclude but also "from the tribe's general authority, as sovereign, to control economic activity within its jurisdiction."); *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 155, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) ("Indian tribes possess a broad measure of civil jurisdiction over the activities of non-Indians on Indian reservation lands in which the tribes have a significant interest.") The question is not whether Rio Grande or the Tribe are bound by federal labor law but, rather, whether Rio Grande is also bound by the Pueblo's Labor Ordinance, which, in turn, depends on whether the Tribe had the authority to enact the Ordinance.

▆▆▆ To resolve this dispute, the Court looks first to the principles which inform any analysis of the exercise of Indian sovereign authority. The Supreme Court has recognized that, "[t]hrough various Acts governing Indian tribes, Congress has expressed the purpose of 'fostering tribal self-government.'" *Merrion*, 455 U.S. at 138, 102 S.Ct. 894. "Indian tribes within 'Indian country' are a good deal more than 'private, voluntary organizations.' They are unique aggregations possessing attributes of sovereignty over both their members and their territory." *Id.* (citations and quotations marks removed). As this Court previously observed,

> [i]t is clearly established law that Indian tribes do not derive their sovereign powers from congressional delegation. Rather, tribal sovereignty is inherent, and tribes retain 'attributes of sovereignty over both their members and their territory, to the extent that sovereignty has not been withdrawn by federal statute or treaty.'

*Kerr–McGee v. Farley*, 915 F.Supp. 273, 277 (D.N.M.1995) aff'd. 115 F.3d 1498 (10th Cir. 1997) (citing *Iowa Mutual Ins. Co. v. La-Plante*, 480 U.S. 9, 14, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303, (1978)); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Tribal sovereign authority may be abridged only by a "clear indication" to that effect in the language or legislative history of a statute, or by federal preemption of the entire subject area. *Iowa Mutual*, 480 U.S. at 17–18, 107 S.Ct. 971. Silence regarding Indian Tribes is insuffi-

cient to establish an abrogation of traditional sovereign authority. *Id.* at 18, 107 S.Ct. 971 ("the proper inference from silence ... is the sovereign power ... remains intact."); *Burlington Northern R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 905 (9th Cir.1991) *cert. denied* 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992) ("The silence as to Indian tribes does not 'clearly' indicate Congress intended to restrict tribal taxation; more likely it indicates Congress did not consider the subject.")

In the present case, invoking its sovereign authority to regulate commerce, the Pueblo adopted *Labor Organizations Ordinance No. 96–63*, which states, in relevant part:

> (a) No person shall be required, as a condition of employment on Pueblo lands, to: (i) resign or refrain from voluntary membership in, voluntary affiliation with, or voluntary financial support of a labor organization; (ii) become or remain a member of a labor organization; (iii) pay dues, fees, assessments or other charges of any kind or amount to a labor organization; or (iv) pay to any charity or other third party, in lieu of such payments any amount equivalent to or a pro-rata portion of dues, fees, assessments or other charges regularly required of members of a labor organization.

Plaintiff the NLRB and Intervenor Union take issue with that portion of this statute which prohibits requiring union membership as a condition of employment. Seeking to invalidate this provision, the NLRB and the Union argue that federal labor law preempts this area, prohibiting Tribal legislation of this nature.

In most other areas of labor law, Plaintiff and Intervenor would likely be correct that the National Labor Relations Act (NLRA) preempts state and presumably Tribal legislation. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) ("When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."); *Navajo Tribe v. NLRB*, 288 F.2d 162, 164 (D.C.Cir.

1961). The NLRA specifically permits agreements between employers and unions that the employer will only hire individuals who become union members. Section 8(3) of the Act states, in pertinent part, "nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein," subject to certain specified conditions. 29 U.S.C. § 158(a)(3). Federal law thus permits requiring union membership as a condition of employment, provided that certain prerequisites are satisfied. *Id.* If this were the only Congressional statement on the issue, this Court would be compelled to conclude that federal law does preempt state or Tribal legislation of compulsory union membership contracts. *See Garmon,* 359 U.S. at 245, 79 S.Ct. 773.

■ However, § 14(b) of the NLRA further provides:

[n]othing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

29 U.S.C. § 164(b). In § 14(b), Congress specifically carved out an exception to its general preemption of labor law, allowing continued state regulation of contracts which required union membership as a condition of employment. *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Bd.,* 336 U.S. 301, 307, 69 S.Ct. 584, 93 L.Ed. 691 (1949) *Retail Clerks Intern. Ass'n v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963) (*Schermerhorn II* ).

In *Algoma Plywood,* 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691, an employer argued that § 8(3) of the NLRA preempted § 14(b). The Supreme Court responded,

[t]he short answer is that § 8(3) merely disclaims a national policy hostile to the closed shop or other forms of union-security agreement.... States are left free to pursue their own more restrictive policies. in the matter of union-security agreements. Because § 8(3) of the new Act forbids the closed shop and strictly regulates the conditions under which a union-

shop agreement may be entered, *§ 14(b) was included to forestall the inference that federal policy was to be exclusive.*

*Id.* at 314, 69 S.Ct. 584 (emphasis added). Similarly, in *Schermerhorn II, supra,* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179, a union challenged a state court order finding a contract which required union membership invalid under state law. In upholding the authority of the states to enforce their laws barring such agreements, the Supreme Court observed, "[t]here is thus conflict between state and federal law; but it is a conflict sanctioned by Congress with directions to give the right of way to state laws barring the execution and enforcement of union-security agreements." *Id.* at 103, 84 S.Ct. 219. Finding that the state's action in this area was not preempted under *Garmon* by the otherwise extensive federal regulation of labor law, the Court explained, "[t]he purpose of Congress is the ultimate touchstone. Congress under the Commerce Clause may displace state power or it may even by silence indicate a purpose to let state regulation be imposed on the federal regime." *Id.* In the present case, the Court concluded, "Congress, in other words, *chose to abandon any search for uniformity* in dealing with the problems of state laws barring the execution and application of agreements authorized by § 14(b) and *decided to suffer a medley of attitudes and philosophies on the subject."* *Id.* at 104–105, 84 S.Ct. 219 (emphasis added).

Thus, the Supreme Court has held that federal law does not preempt regulation of contracts which require union membership as a condition of employment. *Algoma Plywood & Veneer Co.,* 336 U.S. at 307, 69 S.Ct. 584; *Schermerhorn II,* 375 U.S. at 103, 84 S.Ct. 219. Despite these explicit holdings, the NLRB and the Union nevertheless argue that this lack of preemption applies only to "the States and Territories," citing the specific language of § 14(b) which does not include Indian Tribes.

■ In general, federal law preempts all other regulation of a subject matter if federal regulation of the subject area is pervasive or if state or local law "stands as an obstacle to the accomplishment of the full purposes and

objectives of Congress." *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Plaintiff NLRB itself argues that federal preemption must apply equally to the Tribes as to the states, even when the Tribes are not specifically mentioned in a statute, if it is evident that federal law preempts the entire subject matter. Brief in Support of Plaintiff National Labor Relations Board's Motion for Summary Judgement, p. 8. Indeed, the hallmark of federal preemption is the notion that Congress has chosen to articulate a single unifying national policy in a given area, eliminating the cacophony of voices normally present in our dual federal-state system of governance. Yet here, the NLRB and the Union argue that Congress adopted a "limited" preemption policy, preempting all "local" regulation of contracts requiring union membership except to the extent specifically articulated in § 14(b).

Plaintiff and Intervenor rely heavily on the case of *New Mexico Federation of Labor v. City of Clovis*, 735 F.Supp. 999, 1002–1003 (D.N.M.1990), which held that the City of Clovis could not enact an ordinance similar to the one at issue here. In *Clovis*, Judge Mechem of this Court held "that Congress preempted the field of regulation of union security agreements, except to the extent specifically permitted in § 14(b)." *Id.* at 1003 (citing *Kentucky State AFL—CIO v. Puckett*, 391 S.W.2d 360, 361 (Ky.Ct.App. 1965) (same holding)). Thus, the Court concluded, municipal laws in this area were preempted, even if state laws were not. In support for this conclusion, the Court observed that Congress may have imagined the diversity of approaches which would result if the states were free to adopt their own laws on union security agreements, but likely had not envisioned the much greater degree of confusion which would result if each city, county or town were permitted to adopt such ordinances.

 The difficulty with applying this holding to Tribal governments is that it would effectively allow the abrogation of Tribal sovereignty through Congressional silence. Tribes are not the equivalent of states or territories, and are nothing akin to municipal governments which derive all of their authority from the states. *See Kerr–McGee*, 915 F.Supp. at 276; *City of Clovis*, 735 F.Supp. at 1004. As this Court stated elsewhere,

> Indian tribes and the federal government are dual sovereigns. Tribes have a unique relationship with the federal government and occupy a unique status under the law. *See National Farmers Union Ins. Companies, Lodge Grass School Dist. No. 27 v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). As Chief Justice John Marshall observed in the historical case of *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1931) [1831]: 'The condition of the Indians in relation to the United States is perhaps unlike that of any other two people in existence ... The relation of the Indians to the United States is marked by peculiar and cardinal distinctions which exist nowhere else.' *Id.* at 16.

*Kerr–McGee*, 915 F.Supp. at 276. Because of this unique relationship, Indian Tribal sovereignty cannot be equated with municipal governance and cannot be abrogated as easily.

By arguing that federal labor law preempts only Tribal regulation of this area because Indian Tribes are not specifically listed in the set of governmental bodies whose authority to regulate is *not* preempted, the NLRB and the Union are arguing that Indian sovereign authority in this area has been abrogated by Congressional silence. No where in the text of the NLRA or the legislative history are Indian Tribes ever mentioned. *See Sac & Fox Indus. Ltd.*, 307 N.L.R.B. 241, 242 (1992) (NLRB decision noting absence of discussion as to status of Indian Tribes under the Act). Indeed, it appears, as is often the case, that Congress simply never considered the application of the NLRA to Indian Tribes or on Indian land. *Id.; see also Burlington Northern R. Co.*, 924 F.2d at 905. Thus, the NLRB's and the Union's assertion that federal law preempts all regulation of this area not specifically allowed in § 14(b) is equivalent to

arguing that Congress abrogated Indian sovereign authority to regulate contracts requiring union membership by failing to specifically state that Tribes retain such authority.

As this Court noted in another case, "[t]his position turns the historic tribal sovereignty analysis on its head." *Kerr–McGee*, 915 F.Supp. at 277. Tribal sovereignty is inherent to Indian Tribes, predating the existence of this nation or our Congress; it is not derived from a grant of authority by Congress. *Id.* Accordingly, as noted above, silence regarding Indian Tribes is insufficient to establish an abrogation of traditional sovereign authority. *Iowa Mutual,* 480 U.S. at 18, 107 S.Ct. 971. As in *Merrion, supra,* 455 U.S. at 151, 102 S.Ct. 894, Plaintiff and Intervenor "cite no specific federal statute restricting Indian sovereignty. Nor do they explain why state [regulation] of the same type of activity escapes the asserted conflict with federal policy." The NLRB and the Union assert that if all 550 Tribes were permitted to adopt their own policies with regards to compulsory union membership contracts, the resulting diversity of approaches would far exceed that envisioned by Congress, as observed by Judge Mechem in the case of similar legislation adopted by local municipalities. While the 550 Tribes clearly out rank the 50 states and various territories in number, there are undoubtedly thousands of municipalities in the nation. Thus, the comparison of Tribes to local governments again fails. Further, in the absence of any Congressional statement on the point, this Court is not in a position to guess how much diversity of opinion is too much. Given that Congress has specifically chosen to allow a diversity of approaches on this issue among the states, it is simply speculation to assert that the same deference would not be accorded to the Indian Tribes. *See Iowa Mutual,* 480 U.S. at 18, 107 S.Ct. 971; *Merrion, supra,* 455 U.S. at 151, 102 S.Ct. 894.

Finally, even if the Court were to conclude that the absence of Indian Tribes in § 14(b) makes the statute ambiguous, "[a]m- biguities in federal law have been construed generously in order to comport … with traditional notions of sovereignty and with federal policy encouraging tribal independence." *White Mountain Apache Tribe,* 448 U.S. at 143–44, 100 S.Ct. 2578. Thus, in the absence of any "clear indication" that Congress intended to abrogate Tribal sovereignty in this area, this Court must err on the side of preserving rather than infringing the Tribes right to self-governance. *Iowa Mutual,* 480 U.S. at 18, 107 S.Ct. 971.

Given the explicit Congressional statement in § 14(b) that federal policy shall not be exclusive in this area, Supreme Court holdings that federal law does not preempt state regulation of contracts requiring union membership, and Congressional silence as to the status of Indian Tribes under the NLRA, this Court concludes that Tribes retain the authority to enact laws which prohibit requiring union membership as a condition of employment. Therefore, Defendant the San Juan Pueblo is entitled to judgment as a matter of law and summary judgment will be granted in Defendant's favor.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment **[Doc. No. 39]** is hereby **GRANTED** and that Intervenor's Motion for Summary Judgment **[Doc. No. 33]** and Plaintiff National Labor Relations Board's Motion for Summary Judgment **[Doc. No. 47]** are hereby **DENIED.** The Complaint is hereby **DISMISSED WITH PREJUDICE.**