**Clifford PAYNE, Appellant,**

v.

**Robert E. PETRIE, Mayor et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 20, 1967.

Leland Logan, Bowling Green, for appellant.

Jerry L. Moore, August Winkenhofer, Jr., City Sol., and Charles H. Reynolds, of Bell, Orr & Reynolds, Bowling Green, for appellees.

DAVIS, Commissioner.

This appeal tests the validity of an ordinance adopted by the City of Bowling Green, a second-class city, imposing a 1% occupational license fee upon persons, associations and corporations engaging in occupations, trades, professions and businesses within the city. The trial court adjudged that the ordinance was valid.

The bases of appellant's attack on the judgment may be summarized as: (1) irregularity in the passage of the ordinance and (2) unconstitutionality of the ordinance.

With respect to the claimed formal irregularity of passage of the ordinance, it is to be observed that Bowling Green is served by a bicameral legislative body, and it is the action of the twelve-member Board of Council which is questioned. When the ordinance came on for vote at a regular meeting of the council, October 3, 1966, all twelve members of the council were present and six of them affirmatively voted "yea" for passage of the ordinance. Five members of the council voted "nay," and one member "passed." Thereupon, motion was made, duly seconded and unanimously adopted that the council " * * * suspend the rules and regulations at this time and have second reading." Accordingly, a second reading was given the ordinance; and when it was put upon its passage, the affirmative vote was again six "yeas," five "nays" and one "pass." The ordinance was declared to be adopted.

One of the council members who voted for the ordinance on each of its readings was councilman Newman. The appellant asserts that councilman Newman had moved from the first ward from which he had been elected and had thereby vacated his office. The trial judge heard evidence touching this issue and found as a fact that councilman Newman had not abandoned his residence in the first ward at the time he voted for the ordinance, October 3, 1966. Our examination of the record convinces us that the factual finding of the trial judge was supported by evidence warranting the finding and that the finding is not clear or at all erroneous. In such case we accept the finding. CR 52.01. It follows that the claimed disqualification of councilman Newman is without merit.

Appellant calls attention to KRS 84.070 and 84.100(1) and (3) and asserts that these statutory provisions make inapplicable the common law rules which have obtained in other situations not involving similar statutes.

KRS 84.070 defines a quorum for a board of councilmen of a second-class city as "[a] majority of the members of the board".

KRS 84.100(1) appears to have no significant bearing on the issues at bar, and appellant does not suggest in what manner he considers that particular section of the statute as inhibiting the actions taken by the Bowling Green Board of Council. KRS 84.100(3) provides:

"No ordinance or resolution shall be passed until it has been voted for by a majority of the members of each board, on a viva voce vote entered in full on its journal, and has been read in each board at two separate meetings and free discussion allowed thereon; but the requirement of a reading at two separate meetings may be suspended by a vote of two-thirds of the members of the board in which the proposed ordinance or resolution is pending."

■ Appellant contends that the questioned ordinance failed of being adopted as required by the just quoted statute in two respects. First, it is maintained that the ordinance was not read at two separate meetings. We think there is no merit in the argument on this point. The statute specifically provides that the requirement of a reading at two separate meetings may be suspended by a vote of two-thirds of the members of the board. As shown, the requirement was suspended by a vote of all members of the board. Appellant contends that the Bowling Green council had never adopted any rules and, therefore, could not vote to suspend non-existing rules. We are unable to accept that argument and consider that the statutory suspension was appropriately adopted, and the ordinance was effectively enacted insofar as the reading at two separate meetings is concerned.

A more serious attack upon the formal passage of the ordinance rests upon the fact that only six members of the Board of Council voted affirmatively for passage while it is provided by KRS 84.100(3) that: "No ordinance * * * shall be passed until it has been voted for by a majority of the members of each board, on a viva voce vote entered in full on its journal, * * *." Six is not a majority of twelve, and unless the "pass" vote of one member can be counted as a "yea" vote, the ordinance failed of obtaining the required majority. The question at bar has been before this and other courts on numerous occasions, and the applicable rule has been stated in varying language. Some of the cases in which the question has been faced include Pierson-Trapp Co. v. Knippenberg, Ky., 387 S.W.2d 587; Morton v. Jungerman, 89 Ky. 505, 12 S.W. 944; Ray v. Armstrong, 140 Ky. 800, 131 S.W. 1039; Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45, 229 S.W. 139; Montgomery v. Claybrooks, 213 Ky. 493, 281 S.W. 469; Hyden v. Tarter, 302 Ky. 184, 194 S.W.2d 174; Craft v. Hall, Ky., 275 S.W.2d 410; City of Springfield v. Haydon, 216 Ky. 483, 288 S. W. 337; and Napier v. Gay, 264 Ky. 359, 94 S.W.2d 682.

■■ In Pierson-Trapp Co. v. Knippenberg, Ky., 387 S.W.2d 587, 588, it was written:

"The rule is that when a quorum of a governing body is present those members who are present and do not vote will be considered as acquiescing with the majority."

We adhere to that rule, but amplify it to point out that the word "majority" as used in the rule does not mean a numerical majority of the entire elected membership of the board, but means a majority of those present and voting. In the case at bar, six members voting "yea" constituted a majority of the eleven members who voted. Under the rule as stated, the "pass" vote must be counted as voting with the six, thereby making seven affirmative votes. Seven, of

course, is a majority of twelve. Obviously there is no question of quorum, since the entire membership was present.

In Craft v. Hall, Ky., 275 S.W.2d 410, the rule did not come into effect because there were only two members voting in a board composed of four. Two was not a majority of the four; hence the two abstaining voters could not be regarded as voting with a non-existing majority group.

We are not persuaded that the requirement that the votes be "viva voce" affects the case at bar. See 44, Words and Phrases Viva Voce p. 522, in which it is said:

"The word 'ballot' is used as a symbol of secrecy, while 'viva voce' is used as a symbol of publicity. Day v. Walker, 247 N.W. 350, 351, 124 Neb. 500.

"The term 'viva voce,' when applied to elections, is used in opposition or contradistinction to the ballot, and simply means that the voter shall declare himself by voice, instead of by ballot. In re Brearton, 89 N.Y.S. 893, 899, 44 Misc. 247."

It appears that less formality is required for a "viva voce" vote than for a secret or written ballot. We can perceive no basis for concluding that the voice vote prescribed by the statute removed it from the long-established rule in this jurisprudence.

The appellant seeks to attack the ordinance as being an unlawful interference upon interstate commerce in contravention of Article 1, § 8 of the United States Constitution. He cites Kentucky State AFL-CIO v. Puckett, Ky., 391 S.W.2d 360. We need not reach the question presented inasmuch as the appellant does not claim that he is engaged in interstate commerce, and thus he does not have standing to attack the ordinance on the ground that it unduly burdens interstate commerce. Kohler v. Benckart, Ky., 252 S.W.2d 854.

The judgment is affirmed.

All concur.