240 So.2d 700 (1970)
Charles EZELL
v.
CITY OF PASCAGOULA et al.
No. 45931.
Supreme Court of Mississippi.
November 9, 1970.
Megehee & Brown, John G. Corlew, Pascagoula, for appellant.
Wiesenburg & Lockard, Pascagoula, for appellees.
SMITH, Justice:
Charles Ezell appeals from judgments of the Circuit Court of Jackson County which, in effect, reversed an order of the City Council of Pascagoula purporting to grant him permission to reconstruct a building known as the Beach Club, the building having been largely destroyed by Hurricane Camille.
Prior to the hurricane, the Beach Club had been a commercial venture of the kind sometimes referred to as a nightclub, and contained a bar, lounge and dance hall. It had been operated by Ezell for some two years prior to the hurricane. Photographs in the record show that the hurricane destroyed the building, excepting only the concrete slab or floor and the front wall. All side walls, interior walls or partitions, and the roof were wholly demolished.
*701 The Beach Club was a "nonconforming use" in a hotel-motel-apartment zoning district under provisions of Comprehensive Zoning Ordinances of the City of Pascagoula. Section 601.6.6 of these ordinances provides:
Where a nonconforming use status applies to a structure and premises in combination, removal or destruction of the structure shall eliminate the nonconforming status of the land. Destruction for the purpose of this subsection is defined as damage to an extent of more than fifty per cent (50%) of the replacement cost at the time of the destruction.
In the event of the destruction of a building devoted to a nonconforming use as defined in the ordinances, subsequent reconstruction or rebuilding is required to conform to a use prescribed for the district in which it is located.
The City of Pascagoula operates under the Council-Manager Plan [Mississippi Code 1942 Annotated section 3825.5-02 through 3825.5-43 (1956)].
Mississippi Code 1942 Annotated section 3825.5-09 (Supp. 1968) provides that the governing body of a municipality operating under the plan shall be "a council, consisting of a mayor and five (5) councilmen."
Mississippi Code 1942 Annotated section 3825.5-28 (1956) provides:
At all meetings of the council, a majority of the members thereof shall constitute a quorum, and the affirmative vote of a majority of all of the members of the council shall be necessary to adopt any motion, resolution or ordinance, or to pass any measure whatever, unless a greater number is provided in this act. Upon every vote taken by the council, the yeas and nays shall be called and recorded * * *. (Emphasis added).
Under the procedure in effect in Pascagoula, Ezell applied to the Pascagoula Building Official for a permit to rebuild the Beach Club. After an inspection, the Pascagoula Building Inspector found that there was approximately $3,000 worth of building left (the floor and front wall) and estimated that $15,000 additional would be required to restore it to its original condition. After a conference between the Building Inspector and Building Official, the latter declined to issue the permit on the ground that the Beach Club had been destroyed to an extent of more than 50 per cent of its replacement cost. From this ruling Ezell appealed to the Pascagoula Board of Zoning Adjustment and Appeals. That body recommended that no permit be issued.
On September 30, 1969, Ezell and his attorney, in an ex parte appearance, requested the Pascagoula City Council to issue a permit to rebuild. A vote was taken resulting in all five of the members present voting in favor of granting the request, one member having been absent. The next day, appellee Thron Riggs and others, citizens and taxpayers of the City of Pascagoula, appeared before the Board and protested the granting of the permit. The Board reconsidered its action of the previous day, found that a public hearing should be had before any final action should be taken and withdrew permission to rebuild. Notice of the hearing was given and petitions for and against the granting of the permit, each signed by many Pascagoula citizens and taxpayers, were filed with the Board. Also, at the final hearing a number of witnesses testified on each side.
At the conclusion of the hearing, the Pascagoula City Council entered the following order:
The purpose of this meeting was to continue the hearing and to take final action on the matter of Mr. Charles Ezell to reconstruct his building located on the east end of Beach Blvd., known as the "Beach Club", and after due consideration and discussion of all facts presented at this meeting and prior meetings held *702 to discuss such matter, it was on motion by Councilman Sigalas, seconded by Councilman Walker, ordered that Mr. Ezell be granted permission to reconstruct the said building known as the "Beach Club" to the same size as existed before destruction due to Hurricane Camille, the motion received the following vote:

 Mayor Briggs  Abstained
 Councilman Dambrino  Absent
 Councilman Sigalas voted, AYE
 Councilman Trehern voted, AYE
 Councilman Walker voted, AYE
 Councilman Witchen voted, NAY

From this action, each side appealed to the Circuit Court of Jackson County, where the cases were consolidated for hearing. The circuit court entered judgment in each case, in effect reversing the order of the City Council and sustaining the decision of the Building Official in denying the permit to rebuild. It is from these judgments that the present appeal has been prosecuted.
A number of grounds for reversal are assigned.
Among other things it is argued that the Pascagoula City Ordinance Section 601.6.6 "violates the due process clauses of the Mississippi and United States Constitutions." There is no merit in this proposition. Palazzola v. City of Gulfport, 211 Miss. 737, 52 So.2d 611 (1951).
It is contended that the "circuit court erred in ruling that the 3-1 vote in favor of" the motion to grant a permit to appellant by the City Council of Pascagoula, (one member having abstained, one having been absent, and one having voted "no"), failed to pass the motion.
It is to this latter point that the major portion of the argument of both parties is addressed. Mississippi Code 1942 Annotated section 3825.5-09 (already referred to), provides the governing body of a municipality operating under the Council-Manager Plan shall be comprised of a mayor and five councilmen, that is to say, a total of six members.
To support his contention that Mississippi Code 1942 Annotated section 3825.5-28 (1956) must be construed as requiring only the affirmative vote of a majority of those members present rather than, as set out in the statute "the affirmative vote of the majority of all of the members of the council," appellant cites Marlar v. Board of Supervisors of Tishomingo County, 185 Miss. 120, 187 So. 879 (1939).
Marlar contains a correct statement of the common law rule that a majority of a quorum is all that is required to adopt a measure and that members present and not voting are deemed to have voted with the majority in the absence of a different statutory or constitutional requirement.
Also, appellant urges that the provisions of Mississippi Code 1942 Annotated section 3825.5-28 (1956) are substantially similar to those of a Kentucky statute construed by the Kentucky Court of Appeals in Payne v. Petrie, 419 S.W.2d 761 (Ky. 1967). The Kentucky statute provided: "No ordinance * * * shall be passed until it has been voted for by a majority of the members of each board * * *." Ky.Rev.Stat. 84.100(3).
The statute construed by the Kentucky Court in Payne v. Petrie, supra, is distinguished by the omission of the definitive word "all" which occurs in Mississippi Code 1942 Annotated section 3825.5-28 (1956).
Mississippi Code 1942 Annotated section 3825.5-28 (1956) is in nowise ambiguous as to its requirement that the affirmative vote of a majority of all of the members of the council shall be necessary to adopt any motion, resolution, or ordinance, or to pass any measure whatsoever. The requirement is mandatory and is so *703 clear as to be incapable of being misunderstood.
In their brief appellees also point out that:
The City of Pascagoula, in its municipal Code of Ordinances made a part of the record has by ordinance adopted the statutory requirement that "the affirmative vote of a majority of all of the members of the city council shall be necessary to adopt any motion, resolution, or ordinance or to pass any measure whatsoever." Section 2-33 Code of Ordinances, City of Pascagoula. (Emphasis added).
It was within the province of the Legislature to fix the number of votes necessary for official action. In this connection, we note with interest the varying Mississippi statutory and constitutional voting provisions to which appellees have drawn our attention.
The Mississippi Constitution and several statutes of this state contain mandatory requirements for a specified number of votes. Among the Constitutional requirements are:
Section 49: "two thirds of all of the members present must concur therein."

Section 53: "with the concurrence of two thirds of the members present."
Section 66: "by the concurrence of two thirds of the members elect of each branch of the legislature."
Section 89: "unless it be voted for by a majority of all members elected thereto."
Among the statutes in which the Mississippi Legislature has imposed the requirement of concurrence or an affirmative vote of a specified number of members of a board are:
Section 7544-10: "the concurring vote of a majority of the members" (Aeronautics Board of Adjustments).
Section 7549.7-02: "the affirmative vote of at least 2/3 of the membership" (City Port Commission).
Section 7605-10: "shall be authorized by the affirmative vote of at least 2/3 of the membership (County Port Authority).
Section 8632-15 requires that "three or more members of the board vote in favor" (State Board of Architecture).
Section 8791-20 requires that "Three or more members of the board vote in favor" (State Board of Professional Engineers).
Section 8808: "in any case, the affirmative vote of a majority of the members present and participating shall be necessary to take action, provided, in the case of matters pertaining to practical nursing, such majority must include the affirmative votes of at least one of the officers and at least one of the Practical Nurse members of the Board" (Board of Nurses Examiners).
Section 8830: "a majority vote of the full board." (Board of Nurses Examiners).
Section 8877-104 (Cumulative Supplement) "when only three members are present (a quorum) decisions not gaining unanimous support shall be decided by mail ballot to all board members" (State Board of Psychological Examiners).
Section 8877-112: "The Board by an affirmative vote of at least four (4) of its five (5) members." (State Board of Psychological Examiners).
The Legislature, for reasons which it must have considered sufficient, has provided that the affirmative vote of a majority *704 of all of the members of the council shall be required. There is no ambiguity in this provision and it must be construed as written. In the present case, the affirmative vote of at least four members of the six member council were required to adopt the motion. Other courts, construing similar statutes, have reached the same conclusion. Steers Sand & Gravel Corp. v. Village Board of Village of Northport, Sup., 129 N.Y.S.2d 403 (1954); Van Cleve v. Wallace, 216 Minn. 500, 13 N.W.2d 467 (1944); Hopkins v. MacCulloch, 35 Cal. App.2d 442, 95 P.2d 950 (1939); Ross v. Miller, 115 N.J.L. 61, 178 A. 771 (1935); McCormick v. Bay City, 23 Mich. 457 (1871).
In the Louisiana case of Mix v. City of New Orleans, 126 So.2d 1, 5-6 (La. App. 1960), the Court of Appeals held that a provision that "No proposed ordinance shall be adopted except by the affirmative vote of a majority of all members of the Council" meant the affirmative vote of a majority of the entire membership of the council.
The motion to grant Ezell a permit to rebuild the Beach Club failed to receive the four affirmative votes necessary to its adoption. Therefore, the order of the City Council should have declared that the motion had failed. Evidence in the record, including photographs, is ample to support the view that the Beach Club was more than 50 per cent destroyed by Hurricane Camille and that its reconstruction as a nonconforming use of the property in a hotel-motel-apartment zone was not authorized by the ordinance. The action of the circuit court was correct and the judgments appealed from must be affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, JONES and ROBERTSON, JJ., concur.