DECISION
Before the Court is the appeal of OSA, LP, and Historic Resorts, Inc. (collectively the "Appellants") from a decision of the Zoning Board of Review of the City of Newport ("Zoning Board" or "Board" or "Appellees"). The Board's decision affirmed City's Zoning Officer Guy Weston's ("Weston") denial of Appellants' application for a building permit to replace the tent-like covering of an outdoor cooking area with a solid, permanent roof. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
The Appellant, OSA, LP, owns the property located at 65 Ridge Road in the City of Newport, designated as Tax Assessor's Plat 44, Lot 4. The lot is located in an R-120 residential district. See
Newport, R.I. Municipal Code § 17.44.010 to .070 (2009) [hereinafter Ordinance] (defining the usage and dimensional zoning regulations in R-120), Currently, the lot is occupied by the OceanCliff Hotel ("OceanCliff"), a nonconforming transient guest facility with a restaurant.See Ordinance § 17.100.050 *Page 2 
(stating the City of Newport's regulations for transient guest facilities). Additionally, the restaurant is serviced by a nonconforming accessory outdoor kitchen.
In June 2006, Newport Fire Department Inspector Kevin Gosher, on a routine inspection at OceanCliff, discovered that the outdoor kitchen was in an "imminently hazardous" condition due to grease buildup on the tent-like structure that covered the outdoor cooking area. (Tr. 7-8, Aug. 1, 2007.) This discovery prompted a letter from Newport Fire Marshal Christopher Kirwin ("Fire Marshal Kirwin"), declaring that "your outdoor cooking facilities are in violation of the Rhode Island Fire Safety Code" and is an "immediate fire hazard." (Appellants' Ex. 15.) The letter further ordered that the outdoor kitchen may not be used for cooking "until it is brought up to current fire code standards." Id.
Upon receiving the letter, the management at OceanCliff began to develop plans to remedy the situation by restoring the outdoor kitchen to safe working order. Because the most serious problem was the fire hazard created by the grease-saturated tent, the management designed plans to replace the tent covering with a permanent roof. With plans in hand, Appellants applied for a building permit to replace the tent. Weston denied their application. (Appellants' Ex. 12.)
Appellants appealed Weston's denial to the Zoning Board on November 1, 2006. The Zoning Board held public hearings on June 12, July 23, August 1, and August 27, 2007. David and Linda Gordon ("Gordons"), who own and reside at the house located at 51 Ridge Road, Newport, Rhode Island, objected to OceanCliff's appeal. During the hearings, Weston also testified that he was concerned with the continued expansion of commercial development at the OceanCliff, which is in a residential zone. (Tr. 10, 14-15, Aug. 27, 2007). *Page 3 
He further testified that he had denied the building permit because, in his opinion, replacing the existing tent-like covering with a permanent roof would violate Newport Ordinance § 17.72.030's prohibition on the alteration of nonconforming uses.Id. 6-7. He stated that the proposed replacement would constitute an expansion or intensification of a nonconforming use.Id. at 8.
In response, OceanCliff presented witnesses who testified to the historic use of the property. Don Podesler, OSA's Chief Operating Officer, introduced a number of exhibits relating to past work performed at the property: a map of Newport Tax Assessor's Plat 44 (Appellants' Ex. 1); photographs of the property including images of the cooking facility (Appellants' Ex. 2, 3, 13); a series of building permit documents and related applications (Appellants' Ex. 4, 5, 6, 7, 10, 11, 14); affidavits of former OceanCliff employees and owners (Appellants' Ex. 8, 9); and a cease and desist order from the Newport Fire Marshal (Appellants' Ex. 15) (Tr. 21-30, June 12, 2007.) Bennie Sisto, a former accountant and current owner (as OSA, LP) of OceanCliff, testified to the operation of an outdoor kitchen on the property during the time period between 1979 through 1994. (Tr. 8-9, 11-12, July 23, 2007.) Mr. Podesler also explained that he still makes periodic visits to the property, and during his most recent visit, the kitchen facility looked very similar to the way it did in 1979. Id. at 12.
Fire Marshal Kirwin testified before the Zoning Board regarding the fire code violations he cited against OceanCliff. (Tr. 7-8 Aug. 1, 2007.) He explained that cooking under a tent was not a per se violation of the fire code and noted that cooking under tents is allowed by the State Fire Code. Id. at 12-13. However, Fire Marshall Kirwin found that because the tent over the OceanCliff outdoor kitchen had become *Page 4 
impregnated with grease, it was unsafe to continue cooking under that particular tent. Id. at 8.
On November 16, 2007, the Board denied OceanCliff's appeal of Weston's denial of their building permit. This instant, timely appeal to this Court followed.
 II Standard of Review
The Superior Court's review of zoning board decisions is governed by § 45-24-69(d), which provides:
 The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"The Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions." Restivo v.Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to *Page 5 
pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Id. (quoting Lett v. Caromile,510 A.2d 958, 960 (R.I. 1986)). Rather, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v.Zoning Bd. of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979).
Our Supreme Court has defined "[s]ubstantial evidence [a]s relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to `more than a scintilla but less than a preponderance.'" Lischio v. Zoning Bd.of Review of the Town of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). In short, a reviewing court may not substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record."Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). In contrast, when a question of law is presented, the Court conducts its review of that issue de novo. Tanner v. Town Council,880 A.2d 784, 791 (R.I. 2005). This Court will not reverse a Superior Court justice's decision unless it is shown that the justice "`misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong.'" Cohen v.Duncan, 970 A.2d 550, 561 (R.I. 2009) (quoting OKProperties v. Zoning Board of Review of Warwick,601 A.2d 953, 955 (R.I. 1992) (internal quotation marks and citation omitted)). *Page 6 
 III Law and Analysis
The Zoning Enabling Act of 1991 ("Act" or "Enabling Act"), G.L. §§ 45-24-27 through 45-24-72, controls the regulation of land use in the State of Rhode Island. Under § 45-24-31(49) of the Act, nonconforming property is defined as any "building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment."[1] The Enabling Act further specifies that nonconformance can take two types: nonconformance by use or nonconformance by dimension. Under the Act, a property is nonconforming by use if it is "a lawfully established use of land, building, or structure which is not a permitted use in that zoning district." Section 45-24-31(49)(i). Conversely, a property is nonconforming by dimension if it is "a building, structure, or parcel of land not in compliance with the dimensional regulations of the zoning ordinance. Section 45-24-31(49)(ii). Dimensional regulations include all regulations of the zoning ordinance, other than those pertaining to the permitted uses." Id.
Where either of these types of nonconforming development exists, our General Assembly has required that cities and towns include provisions in their local zoning ordinances protecting the right to continue the nonconforming use:
 Any city or town adopting or amending a zoning ordinance under this chapter shall make provision for any use, activity, structure, building, or sign or other improvement, lawfully existing at the time of the adoption or amendment of the zoning ordinance, but which is nonconforming by *Page 7 
use or nonconforming by dimension. The zoning ordinance may regulate development which is nonconforming by dimension differently than that which is nonconforming by use. Section 45-24-39(a).
Furthermore, pursuant to § 45-24-39(b) "[t]he zoning ordinance shall permit the continuation of nonconforming development; however, this does not prohibit the regulation of nuisances." Additionally, the Act allows municipalities to determine how, if at all, owners of nonconforming uses may make alterations to their properties:
 (a) A zoning ordinance may permit a nonconforming development to be altered under either of the following conditions:
 (1) The ordinance may establish a special-use permit, authorizing the alteration, which must be approved by the zoning board of review following the procedure established in this chapter and in the zoning ordinance; or
 (2) The ordinance may allow the addition and enlargement, expansion, intensification, or change in use, of nonconforming development either by permit or by right and may distinguish between the foregoing actions by zoning districts.
 (b) The ordinance may require that the alteration more closely adheres to the intent and purposes of the zoning ordinance.
 (c) A use established by variance or special use permit shall not acquire the rights of this section. Section 45-24-40.
In accordance with the Act, the City of Newport has adopted a zoning ordinance that provides for the continuance and regulation of nonconforming uses.[2] The current *Page 8 
version of the ordinance classifies a hotel as a "transient guest facility." Such use is prohibited in an R-120 district.See Ordinance § 17.44.020 (listing uses permitted by right and by special-use permit); § 17.04.050 B. ("any use not included in this zoning code as a permitted use is prohibited"); § 17.08.010 (defining "transient guest facility" as primarily for day-to-day or week-to-week occupancy in which guests depend on facilities outside of guest unit for meals). In the instant case, it is undisputed that a hotel has been in continuous operation at the property prior to the several revisions of the Newport Zoning Ordinances. For the purposes of this review, the parties have agreed that the current ordinance classifies the hotel as a pre-existing nonconforming use and the outdoor kitchen as a pre-existing nonconforming accessory use.[3] As such, the property is legally nonconforming within the meaning of the Enabling Act, § 45-24-31(49), and Ordinance § 17.08.010.
The City of Newport exercised the authority granted by § 45-24-40 in enacting Ordinance § 17.72.030 A. through C., which regulates alterations to legally nonconforming uses and provides in pertinent part: *Page 9 
 A. Nothing in this zoning code shall be deemed to prevent the strengthening or restoring to a safe condition of any structure or part thereof declared to be unsafe by decree of any official charged with protecting the public safety, provided that such work does not increase the nonconformity thereof. Nothing in this zoning code shall be deemed to prohibit ordinary repair and maintenance of a nonconforming structure or replacement of existing materials, provided that such work does not increase the nonconformity thereof.
 B. No nonconforming use of land shall be moved to another part of a lot or outside the lot, and no nonconforming use of a building shall be moved or extended to any other part of the building not expressly arranged and designed for such use at the time the use became nonconforming, and no building containing a nonconforming use shall be moved, unless the result of such move is to end the nonconformity. No nonconforming building shall be moved, unless the result of such moving is to reduce or eliminate its nonconformity.
 C. Nonconforming by Use. No nonconforming use of land or nonconforming use of a structure shall be changed except to a conforming use or structure. No nonconforming use of land or nonconforming use of a structure, if once changed to conform, shall thereafter be changed so as to be nonconforming by use again.
Accordingly, this Court must review the Board's determination that the proposed roof replacement would violate the requirements of Ordinance § 17.72.030.
The Court applies the rules of statutory interpretation to municipal zoning ordinances. See Cohen v. Duncan,970 A.2d 550 at 562. "When the language of a statute or a zoning ordinance is clear and certain, there is nothing left for interpretation and the ordinance must be interpreted literally."Id. at 562 (quoting Mongony v. Bevilacqua,432 A.2d 661, 663 (R.I. 1981)). Accordingly, this Court will give "clear and unambiguous language" from the Newport Zoning Ordinances its "plain and ordinary meaning." See id. *Page 10 
In reaching its decision, the Zoning Board noted a 2004 Superior Court decision — Cohen v. Duncan, No. 2002-599; No. 2001-380, June 9, 2004, — wherein this Court interpreted § 17.72.030 to mean that "nonconforming development cannot be altered, expanded or changed in any way under the Ordinance." (Newport Zoning Board's Decision at 5.) While the instant matter was pending, however, said decision was appealed to the Rhode Island Supreme Court and reversed in Cohen v.Duncan, 970 A.2d 550, 553 (R.I. 2009). In revisiting the permissible scope of alterations to a nonconforming use under Sate law and the Newport Ordinances, our Supreme Court inCohen considered whether improvements to the Chanler Hotel, a nonconforming transient guest facility, situated in a residential zone, violated the provisions of Ordinance § 17.72.030.Id. at 553. The improvements in Cohen included reconstructing decks, adding stairs and courtyards, and relocating parking. Id.
Before the Newport Zoning Board, the Chanler Hotel's management testified that they "demolished the old decking, reconfigured the decks, removed asphalt from the old parking lot, and cut down about ten trees, replacing them with about eighty new trees."Id. at 557. Because the old decking was in "great disrepair," the exterior decks were reconfigured during repair. Id. Some decks were removed while others were enlarged. Nevertheless, the management testified that "the new decks were about the same size as the old decks." Id. at 558. The aggrieved party estimated that "the work performed on the hotel structure amounted to more than a 43% increase in the building's original footprint."Id. However, "[t]he board ruled that the planned renovations to the structure did not expand or change the use of the property from its designation as a transient guest facility."Id. at 558-59. In its review, the Cohen Court emphasized that the issue was not *Page 11 
whether the ordinance explicitly granted the right to alter the property, but rather was whether such alterations were the subject of some specific prohibition:
 Although the ordinance does not affirmatively grant permission to "alter" nonconforming uses by right, it clearly does not affirmatively deny the right to make any alteration to a nonconforming use. Rather, it specifically forbids extensions, changes, and movements of nonconforming uses or buildings. We have read similar prohibitory language to limit what the owner of a nonconforming use may do by right. . . . In our opinion, subsections B. and C. of § 17.72.030 of the Newport Zoning Ordinance limit the alterations to a nonconforming use that a landowner may undertake as of right, with respect to the movement, change, and extension of the nonconforming use or building. Therefore, we believe the ordinance by its plain meaning allows some alterations, as long as they do not change the use, extend the use, or move the use or the building in the manner proscribed by the ordinance. Id. at 662 (internal citation omitted).
Essentially our Supreme Court focused only on whether the improvements to the Chanler "(1) moved the building or moved or extended the hotel use to another part of the land or to another part of the building not previously designed for such use at the time the use became nonconforming;" and whether the management "(2) changed the use of the land or structure from that of a hotel use." Id. at 563 (citing Ordinance § 17.72.030B., C.).
In so ruling, our Supreme Court explained: "[t]here is no hard and fast rule to determine when an improvement amounts to an extension of a nonconforming use or a change in use." Id. at 564. Rather, "[e]ach case must be considered and determined on its own facts." Id. (citing Santoro v. Zoning Bd. of Review ofWarren, 93 R.I. 68, 72, 171 A.2d 75, 77 (1961)). Our Supreme Court further noted that an extension typically involves construction of a new building, an addition to a building, an extension in the area devoted to the use, or a significant physical change in the structure that *Page 12 
accommodates the nonconforming use. See id. (citing 4 Edward H. Ziegler, Rathkopf's The Law of Zoning andPlanning, § 73:16, at 73-75 (rev. vol. 2007)).
The Cohen Court then found no evidence that Cliff Walk [owners of the Chanler] moved the building or that the decks, stairs, or courtyards moved or extended the hotel use to another part of the land or building not previously designed for such use at the time the use became nonconforming." Id. at 564. Though there was testimony that older decking had been torn down and replaced, "decreasing the dimensions of the decks in some places and enlarging them in other places," our Supreme Court determined that the ultimate result was that "the new decks were about the same size overall as the old decks." Id. The Cohen Court also found that even the construction of new exterior stairways to the guest rooms "did not involve significant physical changes to the structure" or "operate to extend the area that accommodated the hotel use" or "extend the use of the facility as a hotel."Id. at 565.
Furthermore, the Cohen Court concluded that the improvements did not change the hotel's use. Id. It observed that "[t]he use of the structure is not substantially different; it is still a hotel, it has not increased the number of rooms, it has not changed the types of services it provides, the structure was not [wholly] replaced, there is no evidence of increased business or patronage, and there is no evidence that it has changed its effect on the neighborhood." Id. at 565. Thus our Supreme Court concluded that "the trial justice erred when she found that these improvements violated § 17.72.030 B. and C." Id.
Similarly, OceanCliff's replacement of the current tent-like covering with a sturdier, safer, and more permanent covering does not involve significant physical *Page 13 
changes to the structure, operate to extend the area that accommodated the hotel use, nor intensify or change the use as a hotel. Nothing in the record reveals that the structure is dimensionally nonconforming or fails to conform to the Ordinance's setback requirements. Accordingly, this Court finds that the replacement of the tent-like covering with a more solid roof is not prohibited under the terms of Ordinance § 17.72.030.
This Court further notes that some jurisdictions consider the substitution or replacement of materials constituting a nonconforming structure or use to represent an extension of the nonconformance. Those jurisdictions do so because amortization of nonconforming uses is permitted, and anything that extends the useful life of the nonconforming use can fairly be considered an extension of the nonconformance. See, e.g.,Ezell v. Pascagoula, 240 So. 2d 700 (Miss. 1970) (recognizing the rule that repairs may only be completed if the estimated cost is equal to less than half the value of the structure and requiring elimination of nonconforming use in other circumstances[]); seegenerally 4 Edward H. Ziegler, Rathkopf's The Law of Zoningand Planning § 72:4 n. 1 (rev. vol. 2007) (listing the states that recognize a vested right to continue an existing nonconforming use and those that "specifically permit amortization"). However, in Rhode Island, municipalities are prohibited from amortizing nonconforming uses, and where nonconforming, uses must be affirmatively abandoned or deemed nuisances. See
G.L. § 45-24-39(b); Am. Oil Co. v. City of Warwick,116 R.I. 31, 351 A.2d 577 (1976) (holding that the city's zoning amendment that allowed amortization of signage and billboard nonconforming uses was an unconstitutional taking). As such, extending the useful life of a nonconforming use does not, without more, constitute an impermissible act in Rhode Island. SeeCohen, 970 A.2d at 563, 565 (giving no effect to the Superior *Page 14 
Court's opinion that "breathing new life" into the Chanler Hotel nonconforming use by repairing or modernizing the structure was a violation of Newport Zoning Ordinance § 17.28.030); accordGagne v. Lewiston Crushed Stone Co., 367 A.2d 613 (Me. 1976) ("reject[ing] a per se rule that prolongation [of a nonconforming use] alone, without consideration of any other circumstance, constitutes `enlargement' as a matter of law-at least when, as here, the ordinance itself purports to make no such provision").
At further issue is whether the proposed roof replacement extends, changes, or moves the outdoor kitchen in contravention of Ordinance § 17.28.030 B. See Cohen,970 A.2d at 562-63 (stating that the Newport Ordinance § 17.72.030 B specifically prohibits five types of alterations to nonconforming uses, but does notcategorically prohibit all alteration). Examining the evidence before the Board, this Court finds that there is nothing in the record that would justify the Board's conclusion that OceanCliff sought to move the kitchen facility, extend the kitchen use to another part of the property or erect a building not previously designed for such use at the time the hotel became nonconforming.See Ordinance § 17.72.030 B. The record reflects that the footprint of the structure is to remain exactly the same as it is currently. Therefore, the improvements would not expand the hotel to other parts of the property, move the hotel or kitchen, or increase the hotel or kitchen's footprint. See Cohen,970 A.2d at 564 (determining that the renovations to the decks, stairs and parking lot were not "significant physical changes").
Further, the record demonstrates that the proposed changes do not alter the accessory use from that of a kitchen or change the use of the dominant structure from that of a hotel. See
Ordinance § 17.72.030 C. It is well-established in Rhode Island that a *Page 15 
"change of use" requires showing that the "proposed use issubstantially different" from the previous use of the legally nonconforming parcel. Cohen, 970 A.2d at 565 (quotingHarmel Corp. v. Members of the Zoning Bd. of Tiverton,603 A.2d 333, 335 (R.I. 1992) (internal citation omitted)). Additionally, "minor repairs, changes or alterations," including small increases in the number of business patrons or profits, or type of the equipment used are not de facto, impermissible changes to the intensity of use. Id. (internal citations omitted). TheCohen Court relied on these principles to conclude that repairing decks, stairs, courtyards and relocating the parking area did not change or intensify the use of the Chanler as a hotel. Id. at 564; see also Harmel Corp., 603 A.2d at 305 (change from private, nonprofit club and restaurant with commercial liquor license to public club and restaurant did not result in substantially different use). But seeTown of Richmond v. Wawaloam Reservation, Inc.,850 A.2d 924, 935-36 (R.I. 2004) (holding that the addition of an internal road within a legally nonconforming campsite was an impermissible enlargement of use); Souza v. Zoning Bd. of Reviewof Warren, 104 R.I. 697, 699, 248 A.2d 325, 327 (1968) (finding that an auto body shop was a substantially different use from a woodworking, plumbing, and heating business); Santoro,93 R.I. at 72, 171 A.2d at 77 (holding that a wooden grocery store with a gas station was substantially different from a new gasoline station building with additional gasoline pumps and a sharp increase in business).
As with the Chanler hotel, the use of OceanCliff with a roofed accessory kitchen is not substantially different: "it is still a hotel, it [will] not increase[] the number of rooms, it [will] not change[] the types of services it provides, the structure [will] not [be] [wholly] replaced, there is no evidence of increased business or patronage, and there is no *Page 16 
evidence that it [will] change[] its effect on the neighborhood."Cohen, 970 A.2d at 565. The OceanCliff operated as a hotel with an accessory kitchen prior to the addition of the roof and will remain a hotel with the same size accessory kitchen after the addition. The evidence demonstrated that replacing the roof of the cooking facility will not increase the number of meals prepared, the number of patrons served, or the size of the cooking area. After the alteration is made to the tent-like structure, not only will the use as a kitchen not substantially change but also, in fact, the structural footprint will not have changed at all. Other jurisdictions have found that alterations similar to OceanCliff's roof addition did not constitute violations of nonconforming use ordinance provisions. See Horowitz v. Dearborn,52 N.W.2d 235, 236 (Mich. 1958) (holding that the "substitution of aluminum coverings . . . for canvas" over the wooden frames of carnival tents did not violate permissible nonconforming use);see also In re Appeal of Wesco, Inc.,904 A.2d 1145, 1155-56 (Vt. 2006) (concluding that building a metal canopy over the footprint of legally nonconforming gasoline pumps was not an impermissible alteration within the meaning of the zoning ordinance); Donaghy v. Bd. of Adjustment of the City of GreenRiver, 55 P.3d 707, 708, 711-12 (Wyo. 2002) (finding that covering an open air patio with fiberglass panels did not impermissibly expand the legally nonconforming use);Crawford v. Bldg. Inspector of Barnstable,248 N.E.2d 488, 490 (Mass. 1969) (holding that eliminating porch steps and enclosing the porch's landing area did not improperly enlarge the legally nonconforming use of the hotel).
Accordingly, the Board's findings that the improvement of the tent-like covering to a permanent roof expanded or changed the use of the property as a transient guest facility were clearly erroneous and affected by error of law. See section 45-24-69(d). *Page 17 
This Court concludes, therefore, that the Board erred when it found that these improvements would violate § 17.72.030 B. and C.
Furthermore, even if the alterations the Appellants sought were generally proscribed by the prohibitions contained in § 17.72.030 B. and C., the Board's decision affirming the Zoning Officer would still be characterized as an abuse of discretion and tainted by error of law because it contravenes the clear meaning of Ordinance § 17.72.030 A. Ordinance § 17.72.030 A. provides, in pertinent part, "[n]othing in this zoning code shall be deemed to prevent the strengthening or restoring to a safe condition of any structure or part thereof declared to be unsafe by decree of any official charged with protecting the public safety." The Appellees contend that the proposed plans are not permitted under § 17.72.030 A. because the plans do not restore the structure to a safe condition, but instead create a new permanent structure where previously only a tent-like structure existed. Appellees also argue that the structure itself has not been declared unsafe; rather it is only the use of the structure for cooking that is unsafe. Finally, Appellees assert that the replacement roof constitutes an intensification of the use because it prolongs the use's useful life. In response, the Appellants contend that they may avail themselves of the exception contained in Ordinance § 17.72.030 A. because the letter from the Fire Marshal counts as a declaration, replacement of the roof constitutes a strengthening within the meaning of the Ordinance, and the replacement does not constitute an intensification under Rhode Island law.
When engaging in statutory interpretation, this Court's goal "is to give effect to the purpose of the act as intended by the legislature." Barrett v. Barrett,894 A.2d 891, 897 (R.I. 2006) (internal citation omitted). Where a statute is clear and unambiguous, this *Page 18 
Court interprets the statute giving effect to its plain and ordinary meaning. R.I. Depositors Econ. Prot. Corp. v. Bowen CourtAssocs., 763 A.2d 1005, 1007 (R.I. 2001). However, where a mechanical application produces an absurd result or would defeat the legislative intent behind the enactment, this Court must apply the statute so as to effectuate the act's purpose. Skaling v. AetnaIns. Co., 742 A.2d 282, 290 (R.I. 1999).
It is clear that the plain meaning of Ordinance § 17.72.030 A. creates an alternative avenue to ensure the nonconforming use of a particular property is protected against governmental attempts to encroach upon or eliminate the nonconformity. Our General Assembly has authorized, and the Newport City Council has chosen to balance, the City's interest in ensuring public safety with an owner's interest in maintaining his or her current nonconforming use by permitting the owner to undertake alterations and renovations that would otherwise be prohibited.See Ordinance § 17,72.030 A. This section goes into effect when the alterations are undertaken as a result of a government order to protect public safety, even if the particular alteration would otherwise violate § 17.72.030 B. or C. Id.
Here, the Board found that the Appellants were not permitted to rely on § 17.72.030 A. because the primary intent of that section is to allow for the strengthening or restoration of structures to a safe condition. Because the tent-like structure is safe, without the associated kitchen use, the Board found that the Appellants could not make use of that section to replace the roof over the kitchen. Moreover, the Appellees argue that the proposed plans are not permitted under § 17.72.030 A., because the plans go far beyond restoring the structure to a safe condition by calling for the creation of a new permanent structure where previously only a tent-like structure existed. Appellees argue *Page 19 
that because the ordinance only allows restoration, the subject structure must, at one time, have been safe. However, they argue, there is no evidence that the structure was ever in a safe condition, only that the fire code violations were not discovered until recently.
Section 17.72.030 A. specifically permits "strengthening or restoring to a safe condition . . . any structure or part thereof declared to be unsafe by decree of any official charged with protecting the public safety." Here the tent-like structure covering the cooking area is a structure for purposes of the Newport Ordinances. See section 45-24-31 (defining a structure as "[a] combination of materials to form a construction for use, occupancy, or ornamentation, whether installed on, above, or below, the surface of land or water"). There is no dispute that the Fire Marshal is an official charged with protecting the public safety. Moreover, it is clear from the record that the precipitating cause of the outdoor kitchen's shutdown was indeed the order from the Fire Marshal declaring it to be unsafe. See (Appellants' Ex. 15). Though Appellees contend that the tent is safe in the absence of the associated kitchen use, nothing in the ordinance requires the threat to safety be internal to the structure itself. Appellants' use of the structure as a kitchen is a protected property right because it is a pre-existing nonconforming use. Where the structure is rendered unsafe to use for its intended purpose, § 17.72.030 A. permits the owner to make it safe.
Likewise, Appellees' position that the Appellants may not rely on § 17.72.030 A. because no official ever ordered them to put a permanent roof on the facility is unavailing. The plain meaning of § 17.72.030 A. requires no such order. All that is required of a public safety official to trigger the rights to proceed under § 17.72.030 A. is the declaration that the structure, as used, is for some reason unsafe. Here, the Fire *Page 20 
Marshal's letter more than satisfied that requirement. See
(Appellants' Ex. 15.) Once declared unsafe, the steps taken to strengthen and restore the structure to a safe condition — given the use of the facility for outdoor cooking — are solely within the control and discretion of the property owner and are subject only to the limitation that they "[do] not increase the nonconformity." Ordinance § 17.72.030 A.
The Zoning Board further found that the Appellants could not make use of § 17.72.030 A. because the proposal would have violated that section's prohibition on increasing the nonconformity by changing a tent-like structure into a permanent one. Yet, the Board failed to appreciate the nature of the nonconformity. By focusing on the fact that nothing about the structure itself is nonconforming and recognizing that it is only the use of the facility that results in the kitchen's nonconforming status, it becomes clear that nothing about the proposal to replace the tent with a more permanent roof could possibly constitute an intensification of the use. As already discussed, nothing about the proposed roof would result in an increase of meals prepared, or cause greater traffic or patronage at the restaurant the facility serves, or increase the footprint of the facility. See Cohen, 970 A.2d at 563. Further, Rhode Island does not consider an extension of a structure's useful life to constitute a per se prohibited extension or intensification. Therefore, the Board's conclusion that the Appellants were not entitled to rely on § 17.72.030 A. to justify replacing the roof was affected by error of law.
 Conclusion
After review of the entire record, this Court finds the Board's decision upholding the decision of the zoning officer denying the issuance of a building permit to replace the tent-like roof on the outdoor kitchen with a permanent roof was affected by error of law *Page 21 
and was clearly erroneous. Substantial rights of the Appellants have been prejudiced. Accordingly, the decision of the Board is reversed with orders to reverse the decision of the zoning officer and order the issuance of the building permit forthwith. The Appellant shall prepare an appropriate order for entry.
[1] This language is mirrored in Newport Ordinance § 17.08.010, which provides that a nonconforming use is "[a] lawfully established use of land, building, or structure which is not a permitted use in that zoning district."
[2] Specifically, Newport Ordinance § 17.72.020 provides that
 [w]ithin the districts established by this zoning code or by amendments that may later be adopted there exist or may exist uses, structures or lots which were lawful before this zoning code was passed or amended, but which would be noncomplying under the provisions of this zoning code or any such amendment. Such uses, structures and lots are termed nonconformities. It is the intent of this chapter to permit these nonconformities to continue until they are removed or abandoned. Abandonment of a nonconforming use shall consist of some overt act, or failure to act, which would lead one to believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use unless the owner can demonstrate an intent not to abandon the use. An involuntary interruption of nonconforming use, such as by fire and natural catastrophe, does not establish the intent to abandon the nonconforming use, however, if any nonconforming use is halted for a period of one year, the nonconforming use will be presumed to have been abandoned, unless that presumption is rebutted by the presentation of sufficient evidence of intent not to abandon the use.
[3] Although the outdoor kitchen is an accessory to the dominant hotel structure, both are protected as pre-existing nonconforming uses. See 2 Edward H. Ziegler, Rathkopf'sThe Law of Zoning and Planning § 33:5 (rev. vol. 2007) ("[A] valid preexisting nonconforming principal use along with such preexisting nonconforming accessory uses, if any, will be protected and allowed to continue.").